**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kim Cramton, | No. CV-17-04663-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Grabbagreen Franchising LLC, et al., | |
| Defendants. | |

The bench trial in this matter will begin on May 24, 2021. (Doc. 383.) Pending before the Court is Plaintiff Kim Cramton's ("Cramton") supplemental brief, which the Court construes as a motion to preclude Defendants from introducing certain exhibits at trial on the ground that the exhibits are protected by the attorney-client privilege. (Doc. 374.) For the following reasons, the motion is denied.

## RELEVANT BACKGROUND

In advance of the previous trial setting, Defendants issued a trial subpoena to Shelley DiGiacomo, Cramton's former attorney. (Doc. 370.) Ms. DiGiacomo, in turn, moved to quash the subpoena on the ground that any testimony she might provide would be protected by the attorney-client privilege. (*Id.*)

On December 3, 2020, the Court issued an order denying the motion to quash. (Doc. 371.) This order explained that "in the Final Pretrial Order, Defendants identified Ms. DiGiacomo as a necessary witness and made clear that they would only be asking her about certain non-privileged topics, and Ms. Cramton did not raise any privilege-related

objections. Thus, the motion to quash will be denied without prejudice. Any privilege-related objections to specific questions can be taken up during trial." (Doc. 371, citation omitted.) However, the Court also authorized Cramton, to the extent she wished to be further heard, to file a supplemental brief. (*Id.*)

On December 7, 2020, Cramton filed a supplemental brief. (Doc. 374.) The brief focuses less on the propriety of calling Ms. DiGiacomo as a witness and more on the fact that Defendants have identified, on their exhibit list, "dozens of Plaintiff's attorney-client protected communications with [Ms. DiGiacomo] as exhibits in this case." (*Id.*) According to Cramton, "the only reason that Defendants lucked into accessing these emails was because Ms. Cramton voluntarily turned over a copy of the entire hard [drive] of her laptop that she used when she was working for Defendants." (*Id.* at 3.) Nevertheless, Cramton urges the Court to find that she "did not waive[] her attorney-client privilege with her former attorney." (*Id.* at 4.) The thrust of Cramton's argument is that, even though she communicated with DiGiacomo via her company-issued computer, she didn't waive the privilege though such conduct because "[n]owhere does the employee manual mention a computer use and monitoring policy" and she "is also not aware of any such policy." (*Id.* at 2-3.) Enclosed with the supplemental brief is a privilege log, dated April 6, 2018, that identifies certain Cramton-DiGiacomo emails as privileged. (Doc. 374-1.)

On December 17, 2020, Defendants filed a response to Cramton's supplemental brief. (Doc. 384.) First, Defendants argue that Cramton waived any privilege by sending and receiving the emails in question on a company-issued computer. (*Id.* at 2-4.) In support of this argument, Defendants assert that "the [employee] manual expressly states that employees have no expectation of privacy while using company property, and that all information stored, transmitted or received using company systems or computers are subject to review and monitoring including company computers and emails." (*Id.*) Second, and alternatively, Defendants note that after Cramton stopped working for them, she copied all of the emails in question onto a personal hard drive and attempted to delete them from the company's computer system. (*Id.* at 4-6.) Defendants further note that, in response to

their requests during the discovery process for documents stored on this personal hard drive, Cramton declined to "produc[e] bates labeled PDFs . . . or creat[e] a directory with hash values assigned to the content of the hard drive in its native ESI format" and instead simply "delivered the hard drive in an 'as is' state to the Defendants as her document production in discovery." (*Id.*, emphasis omitted.)  According to Defendants, Cramton's voluntary production of the entire hard drive means she has waived any privilege claim pertaining to its contents.  (*Id.*)  Defendants further argue that, because they sent a letter to Cramton's counsel in October 2018 disclosing this issue (Doc. 384-1 at 22-23 ["[We have] a copy of Mrs. Cramton's hard drive.  We plan to review documents on that drive but want to first clear this [privilege] issue."]), Cramton's current efforts to assert privilege claims are untimely.  (Doc. 384 at 5.)  Third, and finally, putting aside these theories of waiver, Defendants argue that some of the emails in question aren't actually privileged because they "lack content for the purpose of securing or giving legal advice." (*Id.* at 1.)

**DISCUSSION**

As a threshold matter, although the parties' supplemental briefs suggest their privilege dispute is governed by federal law, the only remaining claims in this action—Cramton's minimum wage claim (Count Four) and claims for breach of the implied covenant of good faith and fair dealing (Count Seven), negligent misrepresentation (Count Nine), and fraud (Count Ten)—are state-law claims.  This raises an interesting choice-of-law issue.  On the one hand, the Ninth Circuit has held that, "[i]n diversity actions, questions of privilege are controlled by state law." *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 781 (9th Cir. 1989).  On the other hand, this is not a diversity action.  The Court asserted supplemental jurisdiction over Counts Four, Seven, Nine, and Ten at the outset of this case under 28 U.S.C. § 1367, based on the presence of federal claims in Cramton's complaint, and retained jurisdiction over the state-law claims after the federal claims were dismissed at summary judgment.  Some courts have suggested that, in this instance, privilege claims are governed by federal law. *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 227 (D. Mass. 1987) ("Rule 501 does not instruct a federal court on which law of

privilege to use in a federal question case where the court is also hearing a state law claim pursuant to supplemental jurisdiction. Every circuit that has reached this issue has held that . . . the federal law of privilege applies."); *EEOC v. Dudley Perkins Co.*, 2010 WL 11714698, *3 n.4 (N.D. Cal. 2010) (same).

It is unnecessary to resolve the choice-of-law issue here because the result would be the same under Arizona or federal law. In Arizona, "a client waives the [attorney-client] privilege by disclosing confidential communications to a third party." *Ulibarri v. Superior Ct.*, 909 P.2d 449, 452 (Ariz. Ct. App. 1995). Similarly, under federal law as construed by the Ninth Circuit, "voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 24-25 (9th Cir. 1981).[1] In *Weil*, the court applied these principles to find that a party had "waived its attorney-client privilege" with respect to a particular communication by "disclos[ing] the content of [that] privileged communication" during the discovery process. *Id.* The court emphasized that the disclosing party's "bare assertion that it did not subjectively intend to waive the privilege is insufficient to make out the necessary element of nonwaiver." *Id.*[2]

That, in a nutshell, is what happened here. In July 2018, during the early stages of the discovery process, Defendants' counsel sent an email to Cramton's counsel complaining about the fact that Cramton had not yet "produced anything related to the hard drive of the computer that Cramton copied and then returned wiped." (Doc. 216-1 at 103.)

---

[1] *See also In re Pacific Pictures Corp.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege."); *United States v. Ruehle,* 583 F.3d 600, 612 (9th Cir. 2009) (noting "the settled rule that *any* voluntary disclosure of information to a third party waives the attorney-client privilege, regardless of whether such disclosure later turns out to be harmful").

[2] *See also Bittaker v. Woodford*, 331 F.3d 715, 719 n. 4 (9th Cir. 2004) ("Despite the somewhat misleading nomenclature, an 'express' waiver need not be effectuated by words or accompanied by the litigant's subjective intent. Rather, the privilege may be waived by the client's, and in some cases the attorney's, actions, even if the disclosure that gave rise to the waiver was inadvertent.") (citation omitted); Restatement (Third) of The Law Governing Lawyers § 79 cmt. g (Am. Law Inst. 2000) ("To constitute waiver, a disclosure must be voluntary. The disclosing person need not be aware that the communication was privileged, nor specifically intend to waive the privilege."); *id.* cmt. c ("The privilege is waived if the client's lawyer or another authorized agent of the client discloses the communication acting under actual or apparent authority.").

Notably, Defendants didn't request a verbatim copy of the hard drive—instead, they "request[ed] that [Cramton] have a forensic person take possession of the hard drive copy she made and run a directory of all files on that hard drive. Once we have a copy of the directory of files, then we can discuss with you what should be produced." (*Id.*) In September 2018, following several telephonic meet-and-confer sessions, Cramton's counsel wrote a response email explaining that, because "there are many more files on the hard drive than we previously thought," Cramton didn't "think it would be feasible or productive for us to proceed as we discussed before." (*Id.* at 110.) Accordingly, in lieu of imaging the hard drive and producing to Defendants only the subset of documents that were subject to disclosure—an approach that would have enabled Cramton to withhold the DiGiacomo emails on privilege grounds—Cramton offered to "turn over the entire hard drive to [Defendants]." (*Id.*) In this email, Cramton also invited Defendants to feel "free" to "Bates stamp and produce those documents from the imaged hard drive that [you] believe are relevant to this litigation." (*Id.*) Cramton then proceeded to turn over the entire hard drive, which included her emails with DiGiacomo.

This disclosure was fundamentally inconsistent with a desire to maintain the confidentiality of those emails. *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127 (9th Cir. 2012) ("The reason behind this [waiver through voluntary disclosure] rule is that, if clients themselves divulge such information to third parties, chances are that they would also have divulged it to their attorneys, even without the protection of the privilege. Under such circumstances, there simply is no justification to shut off judicial inquiry into these communications.") (cleaned up). Courts have not hesitated to find waiver under analogous circumstances. *See, e.g.*, *United States v. Mackey*, 2012 WL 3260462, *3-4 (N.D. Ga. 2012) (defendant waived attorney-client privilege as to a memo prepared by defendant's counsel by "voluntarily produc[ing] . . . several computer hard drives" to state regulators, including one that contained the memo in question); *United States v. Gen. Mar. Mgmt. (Port.) L.D.A.*, 2008 WL 2810594, *2 (S.D. Tex. 2008) ("Buenbrazo waived his attorney-client and spousal communications privileges when he voluntarily disclosed the entire

contents of his computer hard drive . . . . It is well-established that disclosure of attorney-client communications to a third party lacking a common legal interest will result in a waiver of the attorney-client privilege.").

Cramton's actions (and inaction) since the September 2018 disclosure provide further support for a waiver finding. The emails on the hard drive have now been in Defendants' possession for over two years, yet Cramton is only now taking steps to preclude Defendants from introducing those emails into evidence at trial. *Cf. United States v. de la Jara*, 973 F.2d 746, 749-50 (9th Cir. 1992) (affirming district court's finding of waiver, where government seized a privileged letter while executing a search warrant and the privilege holder "did nothing to recover the letter or protect its confidentiality during the six month interlude between its seizure and introduction into evidence," because "we will deem the privilege to be waived if the privilege holder fails to pursue all reasonable means of preserving the confidentiality of the privileged matter").

Given these conclusions, there is no need to resolve Defendants' argument that Cramton waived the privilege with respect to her email communications with DiGiacomo simply by engaging in those communications on a company-owned computer. Even assuming the emails were once privileged, any privilege was lost when Cramton voluntarily produced the emails to Defendants during the discovery process in this case.

Finally, as for the scope of Defendants' questioning of DiGiacomo at trial, the Court again concludes that any privilege-related objections must be raised on a question-by-question basis. Certainly, DiGiacomo will be allowed to testify about the emails in question, but the Court cannot say on the current record just how broadly the waiver reaches. *See generally* Fed. R. Evid. 502. In *Hernandez v. Tanninen*, 604 F.3d 1095 (9th Cir. 2010), the district court concluded that the plaintiff had "entirely" waived the attorney-client privilege with his former attorney (Ferguson) by voluntarily disclosing, as attachments to a summary judgment motion, evidence of his communications with Ferguson about the defendant. *Id.* at 1098. *See also id.* at 1100 ("Hernandez disclosed only his communications with Ferguson about Tanninen."). The Ninth Circuit reversed in

part, holding that although "[d]isclosing a privileged communication . . . results in waiver as to all other communications on the same subject," the waiver extends "only as to communications about the matter actually disclosed." *Id.* at 1100. Thus, "[b]ecause Hernandez only waived privilege with respect to his communications with Ferguson about Tanninen, . . . the district court clearly erred in finding a blanket waiver of the attorney-client and work product privileges as to the entire case." *Id.* at 1101. Here, because the Court has not yet had an opportunity to review the emails in question, it is impossible to ascertain their subject matter (which may define the scope of the resulting waiver).

Accordingly,

**IT IS ORDERED** that Cramton's motion to preclude Defendants from introducing certain exhibits at trial on the ground that the exhibits are protected by the attorney-client privilege (Doc. 374) is **denied**.

Dated this 9th day of March, 2021.

Dominic W. Lanza
United States District Judge